Opinion by
 

 Ehodes, J.,
 

 On behalf of herself and her minor daughter, the claimant in this workmen’s compensation case seeks compensation for the death of her husband, who was employed by defendant as a mine laborer. After hearing, the referee denied the claim and dismissed the petition, whereupon claimant appealed to the Workmen’s Compensation Board, which set aside certain findings of fact and conclusions of law of the referee, and made an award. On appeal to the court of common pleas the award was set aside, and judgment directed to be entered for defendant. Claimant has appealed.
 

 The decisive question in this case is whether the evidence adduced showed that death resulted from an injury due to an accident. From the findings of fact of the referee, as modified by the board, it appears that on November 19, 1932, Drs. McLaughlin and Daley removed a tumor from the left side of deceased’s neck, which tumor later proved to be a fibro sarcoma. The surgical wound healed uneventfully within ten days, and deceased returned to work. On January 10, 1933, he entered defendant’s mine, accompanied by a fellow employee, Kaminski. Upon arriving at their working place, deceased placed two mine rail ties upon the back of Kaminski, who was to carry them to another location. Kaminski told deceased to carry a third tie to the same place. After Kaminski had proceeded about fifty feet toward his destination, deceased came to him
 
 *74
 
 crying, “Oh my neck, Oh my neck.” Thereupon Kaminski took deceased to the boss’s shanty, where they met the mine foreman and two assistant foremen, who, upon being informed of deceased’s condition, sent him immediately to the Nesbitt Memorial Hospital. At the hospital deceased came under the care of Dr. J. A. G. Davis, who made a provisional diagnosis of (1) injury to neck; (2) possible metastasis of fibro sarcoma. X-rays were taken by Dr. Howell, who reported as follows: “There is a fragment of bone fractured off the lower anterior margin of the sixth cervical vertebra. It is slightly depressed. There is no bone pathology of the skull.” Thereafter, a device known as Sayre’s contraption was applied, the object of which was to produce traction for the purpose of relieving muscular spasm in the neck. As this treatment did no good it was discontinued, after two or three days, and a cotton cuff applied to the neck of the deceased. Subsequently a cast was' applied to his neck, about February 1st, which still remained when he left the hospital. Deceased’s condition grew progressively worse, and he died on April 8, 1933.
 

 The record is replete with the testimony of medical experts. Ten physicians testified. The expert testimony was conflicting. Drs. McLaughlin and Daley testified that, in their opinion, the fracture described by Dr. Howell caused, or was a marked contributory factor in, deceased’s death. Drs. Hanlon and Brown testified to the same effect. In the opinion of some of the other experts, deceased’s death was due to a recurrence of the fibro sarcoma. Drs. McLaughlin and Daley performed the operation in November, 1932, when the malignant growth was removed. They testified that it was encapsulated, and that it was removed in its entirety. The experts agreed that the X-rays did not show any bone pathology. Deceased had returned to work on December 15, 1932. He had worked regularly
 
 *75
 
 thereafter, and was in apparent good health until disabled on January 10, 1933. Dr. Daley, a witness for claimant, testified that the fracture of the vertebra was due to trauma, and that there was no pathological involvement due to metastasis. There was no evidence of diseased bone in the region of the fractured vertebra. There is no direct testimony that the handling of the mine ties by deceased caused the fracture, but we are of the opinion that the circumstances are such as to warrant that inference, and to support the finding of the board that the fractured vertebra was sustained by an accident on January 10, 1933. There was ample evidence that the fracture caused the death of deceased on April 8, 1933.
 

 Under the circumstances, we think it was proper for the board to conclude that the fracture was the result of an accident or unlooked for mishap sustained by deceased while in the course of his employment with defendant on January 10, 1933. This inference is warranted, as the board has pointed out, by the natural sequence of events. Deceased was in apparent good health. A few moments after lifting the mine ties to the shoulder of Kaminski he made complaint, indicating that something unusual and extraordinary had happened to him. He was removed at once to the hospital, where X-rays were taken; they disclosed a fracture of the sixth cervical vertebra. He was treated for this condition, but gradually grew worse, and death ensued on April 8, 1933. His death, as the board found on competent evidence, was due to this fractured vertebra, and not from any bone disease in the region of the fracture.
 

 Manifestations of an injury were immediately apparent after deceased lifted the ties. His disability was immediate, apparent, and continuous from that time until he died. The testimony supports the award of the board. See
 
 Witt v. Witt’s Food Market et al.,
 
 122 Pa.
 
 *76
 
 Superior Ct. 557, 186 A. 275;
 
 Bunnell v. State Workmen’s Insurance Fund et al.,
 
 124 Pa. Superior Ct. 171, 188 A. 411.
 

 It is true that the mere fact that an employee was overcome while at work does not of itself support an award of compensation
 
 (O’Neill v. Lehigh Coal & Navigation Co.,
 
 108 Pa. Superior Ct. 425, 165 A. 60, and other cases cited by appellee); but in the present case deceased was in good health immediately before handling the ties, and immediately after indicated that something unusual had happened to him, which, upon removal to the hospital, was found to be a fractured veirtebra. A bone fracture from such an act in the course of the normal duties of an employee is an injury by accident, or an accidental injury. Such break was not an occurrance in the normal, ordinary, or usual progress of a disease. It is argued on behalf of appellee that there was no evidence that the alleged “chip” from the margin of the vertebra was due to violence from accidental means. This contention is not sound. We have repeatedly stated that there is a distinction between “an accidental injury” and “an injury by accidental means.” See
 
 Trau v. The Preferred Accident Insurance Co. of New York,
 
 98 Pa. Superior Ct. 89;
 
 Consentino v. Union Paving Co.,
 
 113 Pa. Superior Ct. 295, 173 A. 470. In
 
 Urian v. Equitable Life Assurance Society,
 
 310 Pa. 342, at page 346, 165 A. 388, at page 390, our Supreme Court said: “Our cases have uniformly held that where the cause of injury or death was an act of the insured, the means which caused the result, to be accidental, must be undesigned and unintentional, that accidental injury or death is an unintended and undesigned result arising from acts done, while injury or death by accidental means is a result arising from acts unintentionally done.” “Under our compensation act all a claimant is required to establish is ‘injury by an accident’ in the course of employ
 
 *77
 
 ment, or in other words, an ‘accidental injury’ as distinguished from an ‘injury by accidental means’ ”:
 
 Consentino v. Union Paving Co.,
 
 supra, 113 Pa. Superior Ct. 295, at page 301, 173 A. 470, at page 472.
 

 Judgment of the court below is reversed, and the record is remitted to the court below, with instructions to enter a judgment in accordance with the findings and conclusions of the Workmen’s Compensation Board.