Harring *v.* Glen Alden Coal Company, Appellant.

Argued December 1, 1938; reargued December 7, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*William A. Schnader,* with him *J. H. Oliver* and *Franklin B. Gelder,* for appellant.

*Thomas C. Moore,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, January 9, 1939:

This case is poised upon a very sharply defined point. Does any evidence show that the deceased, for whose death compensation is claimed, received a blow on his abdomen? If it does, the conclusion may be drawn that

his death resulted from, or was accelerated by, an injury due to an accident in the course of his employment, and compensation should be allowed. If there is no competent proof of such a blow, then it is established that he died from natural causes, a form of heart disease, with which he had been afflicted for sometime preceding the day when the occurrence took place, out of which the claim for compensation arises, and compensation is not awardable.

The deceased, Joseph Harring, was at his work in the mine of defendant for the last time on July 9, 1934. He died July 11, 1934.

Dr. W. J. Doyle, deceased's family doctor, who was also employed by defendant as its physician, was consulted by Harring several weeks before July 9, 1934, and concluded he was suffering from chronic myocarditis, a degenerative condition of the cardiac muscle. On the day in question, July 9th, according to the testimony of his wife, the deceased left home about six o'clock in the morning in his automobile to go to his work. He did not complain of ill health. He was employed as a car cleaner in defendant's mine and his duties were to get into the empty "hopper" cars and sweep and shovel out the refuse coal before they were reloaded. He was required to climb into the cars, over their sides, and descend to the bottom. The cars contained two V-shaped hoppers about ten feet deep and their sides were sloping so as to discharge the coal through the trap door at the bottom of the hoppers.

Michael Kochan, a fellow employee of the deceased, at the hearing before the referee, told the following story: Shortly after seven o'clock on the morning of July 9th, he met the deceased walking from the cars on which he had been working. His attention was challenged because it was so early in the morning, and he asked the deceased what was the matter, to which the latter replied, "I don't know, I slipped on the car and hurt myself." He was advised by Kochan to go to the office and

report the accident, which he did. On subsequent examination, Kochan somewhat elaborated his story, saying the deceased in reply to his question said, "he slipped and fell and hurt his side in the car." The distance from the car, in which the deceased was working, to the point where the witness met him and the conversation took place, was three or four hundred feet. The testimony was admitted over objection on the ground that it was part of the res gestæ. Its competency is challenged before us. We are inclined to the view that it was admissible under our ruling in *Johnston v. Payne-Yost Construction Co.*, 292 Pa. 509, 141 A. 481, a compensation case, where the syllabus sums up our conclusion by stating: "Where a workman is injured in an accident, and he tells how the injury occurred to the first person to whom he subsequently speaks, about ten minutes after the accident, without anything to show deliberation or design, his statement so made is admissible in evidence."

But even with this statement in, there can be no recovery of compensation for the reason that no injury causing or contributing to the death was proved. There is no controversy over the fact that the man had a serious heart trouble or that he died from it. It is contended by appellee that his death was accelerated by a blow on the abdomen. That such a blow was received is sought to be established by the testimony of the claimant, that she saw a mark on his stomach on July 9th which she called to Dr. Doyle's attention, "a small mark, the tip of the finger, and Tuesday the next day it was like the top of the milk bottle shaped, and he [Dr. Doyle] said it was, Mr. Harring told him, the buckle of the belt, and I told him Mr. Harring never wore a belt, he always wore suspenders." Dr. Doyle denied that the conversation took place, and said he carefully examined the man's abdomen, and there was no mark of any kind on it. He was corroborated in this statement by Dr. Smith, who also examined him. There was no description of the alleged mark by any one and no proof whatever as to what it

was, or the cause of it, or that it came from violence. Neither the referee nor the board found as a fact that the deceased had received a blow on the abdomen. Claimant's whole case for recovery of compensation is based upon her statement as to the presence of the mark and upon the testimony of Dr. Colley, a physician of five years' experience, who never saw the deceased and who based his opinion upon the testimony which had been given before the referee. He said, *"If* this man received a blow upon the upper abdomen, the blow was directly causative or was a direct cause of his death, death occurring by coronary thrombosis." Upon being interrogated as to what was the cause of death if he did not get such a blow, he replied that he died by pure coronary thrombosis, a natural cause.

Dr. Doyle, who was called by claimant, testified that the deceased came to his office about nine o'clock in the morning of July 9th and gave him a history of what had happened, saying that while climbing into a coal car he lost his grip and slid down and landed on his feet and struck nothing, simply landed on his feet a little harder than usual. The doctor said he complained of pain in his epigastric region and shortness of breath and had a very rapid pulse. The doctor prescribed for him, sent him home and was called to his house in the afternoon. He then concluded that the man was in the beginning of a coronary thrombosis, and was going to die and had him removed to the hospital. The doctor gave it as his opinion that there was no connection between anything that happened to the deceased on July 9th and his death. He further said that he found no evidence of a blow on his abdomen and that he was not suffering from the effects of such a blow, that he made particular inquiry as to this in order to arrive at his diagnosis and the deceased told him he had not been struck on the abdomen, that he did not strike anything, simply slid down on the side of the car and struck on his feet a little harder than usual.

Dr. H. A. Smith, a witness called by claimant, saw and treated the deceased at the hospital, and was told by him that he was getting into the car, slid and went in a little quicker than he expected to, but landed on his feet and did not fall or strike anything. The witness gave as his opinion that there was no causal connection between what then happened and the heart condition which the man had and that his death was due to myocardial collapse from coronary thrombosis. In view of the testimony of Dr. Doyle and Dr. Smith, the fact that the deceased had a serious heart ailment before the occurrence on July 9th, and his declaration to them that he had not struck anything, nor had a blow upon his abdomen, it could not be inferred from the testimony of his wife as to the mark on his abdomen, that he did receive a blow there, nor can the testimony of Dr. Colley, based upon the assumption that he had such a blow, be sufficient to warrant an award of compensation. There is no evidence whatever establishing that he did receive a blow on his abdomen. This being the true situation, all the doctors are in agreement that he died from natural causes and, therefore, compensation cannot be allowed. In *Adamchick v. Wyoming Valley Collieries Co.*, 332 Pa. 401, 3 A. 2d 377, we said: "To secure compensation there must be proof both of an accident and of an injury; an accident cannot be inferred merely from an injury. There must be some evidence of an accident, either direct or circumstantial, in the latter instance clearly and logically indicating it. . . . Nor can an injury be inferred simply because there was an accident. There must be proof that the injury resulted from an accident." In this case, there was no evidence of an injury resulting from an accident and all of the competent evidence established that decedent died exclusively from natural causes.

The judgment is reversed and is here entered for defendant.

Mr. Justice STERN dissents.