Opinion by
 

 Keller, P. J.,
 

 There can be no doubt that decisions of this court and of the Supreme Court can be cited to uphold the
 
 *386
 
 award, and judgment appealed from in this case. But they were rendered before the Supreme Court handed down its opinions in
 
 Adamchick v. Wyoming Valley Collieries Co.,
 
 332 Pa. 401, 3 A. 2d 377,
 
 Harring v. Glen Alden Coal Co.,
 
 332 Pa. 410, 3 A. 2d 381, and
 
 Crispin v. Leedom & Worrall Co.,
 
 341 Pa. 325, 19 A. 400, reversing similar decisions of this court, and making it plain that there had to be clear proof of an
 
 accident
 
 before compensation could be awarded for disability claimed to have resulted from it.
 

 We are of opinion that in the light of those decisions this award and judgment cannot stand.
 

 The claimant worked as a loader in defendant’s coal mine. In his claim petition filed February 2, 1939 he averred that on January 16, 1939, while at work loading coal he sprained his back, “lifting large piece of boney I twisted my back while trying to throw the boney into the gob.”
 

 At the hearing before the referee he described the occurrence as follows: “I break that piece [of boney] and it fell right on the coal......I take this boney, stepped over a pile of coal between us [that is, between his buddy and himself] ...... I stepped over and at the same time I slipped and I throw that piece of boney on the side and I twisted myself, and I hollered to my buddy and I said something is wrong with my back, and he no answer me. I said by God I can’t work no more.” And again: “At the same time I carry that boney I stepped over the coal and slipped and at the same time I throw that boney and twisted myself and I can’t do no more. Q. Did you fall down? A. No, I never fall down.”
 

 The piece of boney, it was testified, weighed about sixty pounds. He walked out of the mine with his buddy and went to see Dr. Hobaugh, the doctor who attends the miners who subscribe for his services on a monthly basis, and is paid by the defendant on the checkoff system, that is, out of the subscribing miners’ pay.
 

 
 *387
 
 The doctor, called as a witness by claimant, testified that the claimant suffered from osteoarthritis of long standing. When asked by claimant’s counsel, “From the history you received and from your diagnosis, will you state whether or not in your opinion there is a causal connection between the alleged accident of January 16, 1939 and his present condition?”, he answered, “I can’t answer that definitely. It is possible and I would like to qualify that a little more by saying that his disability is perhaps aggravated,” and later:
 

 “Q. If this osteoarthritis had been present prior to the accident, would the accident, such as has been described, tend to aggravate that condition?
 

 “A. That is possible, yes......
 

 “Q. And for what condition did you recommend that he be admitted [to the hospital] ?
 

 “A. For treatment of this osteoarthritis, which he had.
 

 “Q. And from the history you received, you stated that in your opinion it is possible that this condition could have been aggravated by the accident, of which you had a history?
 

 “A. It was the only history of an accident which we had.
 

 “Q. And assuming that to be true, will you state now whether or not that condition could come about from the history of the accident?
 

 “A. An aggravation could have been caused by such an accident.”
 

 By the Referee:
 

 “Q. In your opinion was it caused?
 

 “A. In view of the fact that we have no other history of an accident, yes.
 

 “Q. Then your diagnosis would be osteoarthritis aggravated by the accident?
 

 A. “Yes.”
 

 On cross-examination, he testified:
 

 “Q. Doctor, could you tell from this man’s condition
 
 *388
 
 whether or not this arthritis was of recent origin or was it in an advanced stage?
 

 “A. In all probability it was in advanced stage. The report of the Roentgenologist led me to believe that.
 

 “Q. And was it in such an advanced stage that any strain could aggravate and cause it to be painful?
 

 “A. Yes, I think so.
 

 “Q. Was it in such advanced stage, doctor, that it could be aggravated and become painful by the ordinary hard work of a coal miner?
 

 “A. That is a very difficult question, but I think it could.”
 

 No one saw any occurrence that could be called an accident. The ‘slip’ did not result in any fall, such as was present in
 
 Mohr v. Desimone & Sayers,
 
 110 Pa. Superior Ct. 44, 167 A. 504, where the claimant fell into a ditch fifteen to twenty-five feet deep; or in
 
 Dewees v. Day,
 
 291 Pa. 379, 140 A. 345, where he fell thirty-five feet, landing on his head and shoulders resulting in fractures of the third, fourth and sixth cervical vertebrae. Here there were no outward signs of any accident.
 

 In
 
 Adamchick v. Wyoming Valley Collieries Co.,
 
 supra, there was competent testimony that the claimant’s husband had received a fracture of the sixth cervical vertebra, which was a marked contributory factor in his death, that it was due to trauma, and that there was no pathological involvement due to metastasis, no evidence of diseased bone in the region of the fractured vertebra [131 Pa. Superior Ct. 72, pp. 74, 75]. The evidence in that case was that the deceased was assisting a fellow employee, Kaminski, in carrying mine rail ties. He lifted two of the ties and placed them on Kaminski’s back. The latter told the deceased to take the remaining one. When Kaminski reached the place where the ties were to be put, Adamchick came to him, saying, “Oh my neck, Oh my neck.” He told a mine official immediately afterwards that something “took him in the neck” as he started to pick up the tie. An
 
 *389
 
 X-ray taken the same day at the hospital disclosed the fracture. He did not improve and died three months later. The Supreme Court held that there was not sufficient proof of an accident to sustain an award.
 

 In the present ease the doctor testified that in addition to extensive osteoarthritis of the lumbar spine, of long standing, the X-ray showed fixation of the sacroiliac articulation, particularly on the left, and spondylolisthesis, which is a painful “slipping of the under vertebra forward on the one above,” not of traumatic origin or likely to be due to a twist of the body.
 

 As claimant’s doctor testified that the claimant’s osteoarthritis was in such an advanced stage that it could be aggravated and become painful by any strain, even the ordinary hard work of a coal miner, his assent to the statement put in his mouth by the referee that his “diagnosis would be osteoarthritis aggravated by the
 
 accident ”
 
 cannot stand for want of proof of an
 
 accident,
 
 within the meaning of the Workmen’s Compensation Act. The referee and doctor assumed what it was necessary to prove. See
 
 Gausman v. Pearson Co.,
 
 284 Pa. 348, 13 1 A. 247, where in discussing a death from apoplexy, which it was claimed resulted from heat exhaustion, the Supreme Court said: “True, Dr. Frederick attributed the exhaustion, or stroke, to claimant’s exertion in the performance of his work and expressed the opinion that
 
 but for the work it would not have happened at that time; in other words that the disability was hastened by the work;
 
 even so, that alone would not constitute an accident; otherwise it would be unsafe to give employment to anyone advanced in years. Disability, hastened by such exercise, cannot be treated as accidental.” (Italics supplied).
 

 The ease is similar in some respects to
 
 Pastva v. Forge Coal Mining Co.,
 
 119 Pa. Superior Ct. 455, 179 A. 919, and the same case in 142 Pa. Superior Ct. 42, 15 A. 2d 682, and
 
 Petrusko v. Jeddo-Highland Coal Co.,
 
 109 Pa. Superior Ct. 288, 167 A, 242, which were hernia cases.
 

 
 *390
 
 We feel constrained to add that referees have no more right to ask leading questions or put statements in the mouths of witnesses than counsel have. Leading questions may be asked by counsel by way of
 
 cross-
 
 examination, but referees, in their examinations, should not do so.
 

 The judgment is reversed and is now entered for the defendant.