## Semonovich, Appellant, *v.* Rochester and Pittsburgh Coal Company.

Argued March 19, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Harry B. Hogemyer,* with him *Leland C. Phillips,* and *Arnold D. Smorto,* for appellant.

*G. W. Musser,* for appellee.

OPINION BY WATKINS, J., June 11, 1958:

This is an appeal in a workmen's compensation case from an order of the Court of Common Pleas of Indiana County, reversing the workmen's compensation board and denying benefits to the appellant, Imogene Semonovich, widow of Mike Semonovich, deceased, on the ground that the decedent violated mining laws.

Mike Semonovich, the decedent, on August 27, 1954, in the course of his employment by the Rochester and Pittsburgh Coal Company, the appellee, as a fire boss, was killed in a mine explosion. The appellee denied liability for the reason that the decedent violated the

Pennsylvania and Federal Mine laws and that as a result of the said alleged violation, the explosion occurred that caused his death. The referee found for the claimant, the workmen's compensation board affirmed the referee and on appeal the court below reversed the workmen's compensation board.

The decedent was 36 years of age and had been employed by the same company for twenty years. He was an experienced fire boss. The duties of a fire boss include the checking of the working areas for gas and other danger, prior to the time the men enter the mine. He was so engaged on the morning of the tragedy. By his markings made in the working areas, his course was traced from where he entered the mine on foot, secured an electric motor, made inspections, until he came to the working area known as section 17 South.

This case then turns on whether the decedent drove the electric motor into this working area, bringing about the explosion that caused his death. The referee found as facts that the explosion occurred in 17 South; that the electric motor that had been used by the decedent was found after the explosion in that area; that the decedent's hat was found 3100 feet from where his body was found; that his body was found 153 feet from the locomotive; and that the explosion was caused by a spark from the trolley wire in 17 South, that ignited an accumulation of methane gas.

The bituminous mining law, Section 6, Art. XI of the Act of June 9, 1911, P. L. 756, as amended by the Act of July 1, 1937, P. L. 2486, §27, 52 PS §1161, provides: "Electric haulage by locomotive operated from a trolley wire, is not permissible in any gaseous portion of a mine, . . . except when the portion in which the locomotive operates is free of accumulated explosive gas, . . .". Section 209 (d) of the Federal Coal Mine Safety Act, as amended in 1952 (66 Statutes 692, 30

U. S. Code, Sections 451-483) provides, inter alia: "In all underground face workings in a gassy mine where electrically driven equipment is operated, examinations for methane shall be made with a permissible flame safety lamp by a person trained in the use of such lamp before such equipment is taken into or operated in face regions, and frequent examinations for methane shall be made during such operations."

It certainly follows that if claimant's decedent did take the locomotive into the gaseous section of the mine before making a proper inspection that determined it was not gaseous, he would have violated the law and such violation would bar an award of compensation to the widow and her two minor children. Section 301 (a) of Art. III of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended, 77 PS §431 provides: ". . . no compensation shall be paid when the injury or death . . . is caused by the employe's violation of law, but the burden of proof of such fact shall be upon the employer."

There is no conflict between the parties in regard to the activity of the decedent until he reaches the section of the mine where the explosion occurred. From here on in, the testimony is based on opinions, conclusions and conjectures made by the witnesses from the physical facts found in the area after the explosion. There were no eyewitnesses to the accident so that the case turns entirely on circumstantial evidence gathered after the accident and the inferences that may be drawn therefrom. It is common knowledge that the violence of an explosion brought about by the ignition of methane gas and coal dust in the constricted area of a coal mine performs many tricks and quirks that many times defy reasonable explanation. So it is difficult to explain many of the facts in this case such as the smashed inside door and the open outside door, without prop-

ping, as found in 17 South, and many other physical facts.

However, from the evidence, two theories develop as to how the explosion came about. There is circumstantial evidence to support the theory that the decedent was driving the locomotive in a prohibited gaseous area at the time of the explosion that caused his death. There is also circumstantial evidence to support the theory that the decedent may not have driven the motor into the alleged gaseous area but that in the legal performance of his duties he walked into the area, but the locomotive, being on a grade, the brake being loosened, ran away under its own power and he, although making attempts to stop it, was unsuccessful and the explosion followed. As we have indicated, both theories can be supported by circumstantial evidence of physical facts found after the explosion and inferences to be drawn therefrom.

The controversy as to the conflicting theories is pinpointed by the testimony of J. A. Blackburn, a mine inspector, called as a witness by the appellee company, where he says, "Well, we arrived at the conclusion that he had been operating the locomotive because we found that the locomotive, I believe, was nineteen feet in by the first door. The body was 153 feet away from the locomotive. The outside door was entirely broken and the inside door was standing open and not propped. Whether the brake was set or sufficiently tight to keep that locomotive from following the fire boss along is the only objection I have to the conclusion to which we arrived . . . I think there is an element of doubt there." and the testimony of A. J. Narin, another mine inspector, also called as a witness by the appellee and the chairman of the investigation committee, that made the conclusion favoring the company theory, who testified in answer to a question as to whether he concurred

with mine inspector Blackburn that the locomotive could have run away and caused the explosion, "I am giving that considerable thought, and there is a possibility that he may have left his motor at the top of the entry and walked down into the entry to make the examination. The locomotive could have started and maybe he boarded the locomotive to make a frantic effort to stop it."

From this record we feel the referee was justified in finding, "That after considering all the evidence your Referee is unable to find that the decedent violated the Mine Law on the morning of the fatal accident, the evidence in this case not being sufficiently competent to prove that the decedent performed any act outside of the regular course of his duties, and that he met his death as the result of the explosion that occurred in the defendant's mine while performing said duties." and the board in affirming the referee, "we are constrained to believe that some doubts were entertained by the witnesses as to the correctness of the ultimate conclusion as to the manner in which the volatile and dangerous methane gas was exploded. We entertain the same doubts which leads to the conclusion that the defendant has failed to discharge its affirmative burden of proof."

It is clear that where, in a workmen's compensation case the employer avers that the injury was caused by the employe's violation of the law, the burden is upon the employer to show such violation by evidence approximating that required in criminal cases, though not necessarily beyond a reasonable doubt. *Copello v. New Shawmut Mining Co.*, 179 Pa. Superior Ct. 227, 116 A. 2d 104 (1955). And in this case Judge Ross said: "We realize defendant's difficulty in the matter of proof. There were apparently no eyewitnesses and it would have been proper to prove the violation en-

tirely by circumstantial evidence. The trouble, however, was in the fact that there were few circumstantial facts which could be considered a 'clear preponderance approximating that required in criminal cases'. We have repeatedly held that where there is a conflict in the evidence, the issue of credibility is solely for the trier of fact and, ordinarily, its finding will not be disturbed."

In this case, the court below substituted its finding that claimant's decedent had driven the motor into a gaseous area in violation of the law, for a finding of the compensation authorities, that claimant's decedent had not violated the law and there was sufficient and competent testimony to support the referee's and board's finding.

In *Com. v. New*, 354 Pa. 188, 47 A. 2d 450 (1946), Chief Justice MAXEY said, at page 221, "When two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances, a jury must not be permitted to guess which inference it will adopt, . . . When a party on whom rests the burden of proof in either a criminal or a civil case, offers evidence consistent with two opposing propositions, he proves neither."

The fact finding authorities were justified in finding for the claimant, when the appellee failed to sustain its burden of proof by presenting evidence supporting two conflicting propositions, under one of which the decedent had violated the law, and under the other, had not. The court below, therefore, is without authority to disturb the findings of the compensation authorities, who, passing on the credibility of the witnesses, held that claimant's decedent did not violate the law and was entitled to benefits, and said findings being supported, as they were, by competent evidence.

The decision is reversed and the record is remitted to the court below for the entry of a judgment in favor of the claimant.