Docktor *v.* Krakovitz & Sons et al., Appellants.

Argued September 10, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Frank R. Ambler,* for appellants.

*Wililam A. Whiteside, Jr.,* with him *Fox, Rothschild, O'Brien & Frankel,* for appellee.

OPINION BY FLOOD, J., November 15, 1962:

In this workmen's compensation case the referee and the board both found for the claimant and the court below dismissed the defendant's appeal and affirmed the decision of the board. The appellant argues (1) that the court below erred in overruling its contentions that (a) there was no evidence of any injury to the claimant's right leg, (b) the board capriciously disregarded competent evidence, and (c) there was no competent medical evidence to establish a causal relationship between the accident and the amputation of the claimant's right leg. The appellant also contends (2) that the decision of the court below is contrary to *Adamchick v. Wyoming Valley Co.,* 332 Pa. 401, 3 A. 2d 377 (1939) and other cases.

1. For the reasons set forth in the following quotations from the opinion of Judge McCLANAGHAN of the court below, we find no merit in the appellant's first contention:

"The facts relevant to the issue presented are the following: Mr. Docktor, a man 76 years of age, had been employed by the defendant, Krakovitz & Sons, as a carpenter. On August 24, 1954, while working atop a six foot ladder, Docktor fell onto a metal table, strik-

·ing the corner of the table with his body. A fellow employee helped the claimant make his way to his carpentry shop wherein he lay down for about one hour and a half after the fall. A report was made to the office the same day, and Docktor was told to go to his own doctor that evening. Mr. Docktor testified that his physician expressed the need of X-rays to determine the extent of his injuries. The next day, claimant returned to work; and after having made an effort to resume his tasks, he found himself unable to do so. From that day hence, he did not work again. Subsequently, on August 30, 1954, he entered the University of Pennsylvania Hospital. After several days in the hospital, an arteriosclerotic condition was discovered, which condition necessitated the amputation of the right leg below the knee. . . .

"In their appeal to us, the appellants contend that (1) there had been no evidence of an actual injury to the claimant's right leg; (2) that the Board had capriciously disregarded competent medical evidence, and (3) that the evidence was not sufficient to establish a causal connection between the fall and the amputation.

"This court finds these contentions without merit. As to the first contention, there was testimony in the record, by both Docktor and his fellow employee, Howard Wilkour, that Docktor had fallen off the ladder. The fact that the left leg had been markedly bruised does not negative the possibility that the right leg also suffered impact and was injured. Docktor testified that he felt pain in both legs, but mostly in the right leg; and that he had black and blue marks on his left leg, but felt more pain in his right leg. Furthermore, Dr. Zubrow, an expert on peripheral vascular diseases, testified at the second hearing before the referee, February 7, 1957, that it is possible to sustain an injury internally without any external manifestation. The Board had ample evidence from which

it could find that an actual injury resulted to the claimant's leg.

"As to the causal connection between the fall and the amputation, the Court is of the opinion that the Board did have competent evidence before it from which it could find in favor of Docktor. Claimant had been working daily for fourteen years prior to the accident and then after the accident he never worked again. Within two months after the fall, Docktor's leg was amputated. The litigants each presented medical experts who testified regarding the causal relationship between the fall and the amputation. Doctors Montgomery, Kramer and Rogers, all qualified experts, testified for the appellants, and each in effect stated that the amputation was not caused by the fall in this case; however, each also stated in effect that the possibility of a causal connection between the two existed.

"Dr. Zubrow, claimant's expert on circulatory and peripheral vascular diseases, when questioned regarding the existence of a causal relationship between the amputation and the fall answered straight-forwardly: 'I, therefore, believe that the blow by producing what we call reflex spasm slowed up the circulation enough so that now a chain of events is taking place in the limb which was in very delicate balance and a chain of events is taking place where this situation of his, his arteriosclerosis obliterans, which previously had been in balance is now definitely aggravated . . . so that within 10 days it is now manifest that he is going to lose this leg or at least he has gangrene of a good part of his leg because of the aggravation of this insult. . . . The accident then was the trigger mechanism which set in motion the chain reaction which then as a result of aggravation on a pre-existing—I do not say that it produced gangrene directly, see, a severe blow would be necessary for that, but here we have a situation in which not much is necessary to produce a

change and this change is just this little thing of the accident.' When asked whether Docktor would be without the use of his leg even if the fall had not taken place, he further testified: 'At that particular time; I don't know what would have happened 6 months later or a year later. We do know that for 15 years, 1939 to 1954, he already was getting along with this; I cannot say anything about time relationships in that, but I can only say that I believe that this accident aggravated and hastened the process which was going on in his leg.' On cross-examination, he further stated that, 'In this particular situation it is my opinion that the spasm could have been just enough to reduce the flow and disturb the delicate balance.' The appellant's experts expressed their opinions; all accepted the existence of a possible causal relationship between the fall and the amputation. Dr. Zubrow, on the other hand, testified, not that the condition could exist, but that there was a definite causal connection. The Board did not capriciously disregard the medical testimony presented. It is the caliber of the evidence presented, not the volume, that is most crucial. Bednar v. Westinghouse Elect. Corp., 194 Pa. Superior Ct. 10 (1960).

"The Workmen's Compensation Board concluded that the medical testimony was sufficient to establish the causal relationship between the fall on August 24, 1954 and the amputation the following October. 'The credibility of expert witnesses and the weight to be attached to their testimony are matters exclusively for the board and in a conflict of medical opinion, it is for the board to decide which conclusion it will adopt.' Pavlik v. Harmar Coal Company et al., 191 Pa. Superior Ct. 283, 287 (1959). It has further been said by our appellate courts that: 'We have repeatedly held that where there is a conflict in the evidence, the issue of credibility is solely for the trier of fact and ordinarily its finding will not be disturbed.' Semonovich v.

Rochester and Pgh. Coal Co., 186 Pa. Superior Ct. 486, 492 (1958). 'It was for the board to determine which of the two opinions to accept. Its decision is binding upon us.' Miller v. Schiffner et al., 196 Pa. Superior Ct. 84, 88 (1961)."

2. In this court the defendant relies upon *Adamchick v. Wyoming Valley Co.*, 332 Pa. 401, 3 A. 2d 377 (1939) and subsequent cases all of which are readily distinguishable.

In the *Adamchick* case there was evidence of an injury but the Supreme Court found no competent evidence of an accident. In the other cases cited by the appellant, which are more closely in point, there was evidence of an accident, as well as medical testimony sufficient to establish a causal connection between the accident and the workman's death, provided the workman had sustained an injury to a particular part of his body as a result of the accident: *Harring v. Glen Alden Coal Co.*, 332 Pa. 410, 3 A. 2d 381 (1939) (an alleged blow to the abdomen, death resulting from heart disease), *Hecker v. Shannopin Coal Co.*, 137 Pa. Superior Ct. 581, 10 A. 2d 102 (1939) (an alleged blow on the head, death resulting from stroke), and *Dennis v. Jarka Corporation*, 182 Pa. Superior Ct. 498, 127 A. 2d 803 (1956) (an alleged injury to the chest, death from tuberculosis). In each of these cases there was no competent evidence that the part of the body mentioned sustained the injury upon which the medical opinion as to causal connection depended. In the case before us there is competent evidence both of an accident and of the particular injury—to the right leg—which the claimant's medical witness relied upon to establish the necessary causal relationship between the accident and the loss of that leg.

Order affirmed.