Martin *v.* Union Collieries Company, Appellant.

Argued April 8, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE,
STADTFELD, PARKER, RHODES and HIRT, JJ.

*Edward J. I. Gannon,* of *Hazlett, Gannon & Walter,* for appellant.

*Fred J. Jordan,* with him *Murray J. Jordan,* for appellee.

OPINION BY CUNNINGHAM, J., July 19, 1940:

The claimant in this workmen's compensation case was a carpenter having charge of the maintenance and repairing of the houses of the defendant coal company at one of its Renton collieries. The award for total disability, upon which the judgment now appealed from by the employer was entered, was made upon the theory that claimant suffered an accident while engaged in digging a ditch on March 31, 1937, which so aggravated an existing abnormal condition of his right knee (caused by two previous accidental injuries to it for neither of which any compensation had been claimed) as to bring about total disability beginning March 4, 1938, and continuing up to the time of the hearing. No claim for compensation was made until the filing of the present claim petition on March 23, 1938, almost a year after the alleged accident.

The fifth paragraph of the petition reads: "5. What was the nature of the injury and how was it caused? ...... A. While working in a ditch with a hand shovel the claimant injured his right knee. This knee was thrown out of joint. The knee gradually became worse

and it is now swollen and inflamed." In its answer, the employer averred claimant's earnings subsequent to March 31, 1937, exceeded those prior thereto, and that any disability claimant was suffering was due to a chronic condition of his knee.

The findings of fact upon which the award was based read: "Fourth: The claimant, on November 27, 1936, while working as a repairman for the Union Collieries Company, carrying a timber, slipped and fell, injuring his right knee. He continued to work and on the 13th of December, 1936, while repairing a pump, he slipped and fell, again injuring this right knee. He lost very little time from work. On the 31st of March, 1937, while digging a ditch, he injured his right knee, when his foot slipped from the shovel. Since that time he has had continuous soreness to this right knee. He continued to work, losing time on account of said knee. Claimant ceased working on or about March 4, 1938, and on April 20, 1938, entered the Citizens' General Hospital, New Kensington, Pa., where he was operated upon for drainage of the right knee joint and, where he remained until May 6, 1938.

"Sixth: That the claimant was totally disabled by reason of his injury of March 31, 1937, aggravating an already existent weakened right knee, from March 4, 1938 up to the present time, which total disability will continue in the future for a period indeterminate at this time."

Several of these findings are not supported by the evidence. The effects of the accident of December 13, 1936, have been unduly minimized. He was totally disabled from this accident during the month of January 1937, and after he returned to work frequently complained of pains in his knee. If claimant had filed his petition within one year after this accident we would have an entirely different question before us.

The finding that claimant while working after the

incident of March 31, 1937, "lost time on account of his said knee" is contrary to the evidence. That injury occurred in the forenoon and he continued his work for the remainder of the day. During the next three days the mine was closed down by reason of a new scale adjustment. When the mine reopened claimant returned to his employment and worked regularly for nearly a year—until March 4, 1938. During that period he worked two hundred and sixty-eight days, although the plant as a whole was in operation only two hundred days. Claimant's own version of his reason for quitting work on March 4, 1938, reads: "A. When the [scale] contract was signed, you went back to work? A. Yes. Q. And worked until March 4, 1938? A. Until they changed me on a different job. Q. Why did you quit March 4, 1938? A. Because I couldn't stand it. Q. Were you put on a different job, you say? A. Yes, moved me down to the blacksmith shop. Before that, I was keeping time on [company houses]. I have been doing that for the last ten or twelve years. Q. You were doing carpenter work and general work around the houses, the company houses? A. That's it. Q. When did they move you into the blacksmith shop? A. Transferred me in middle of February, but I didn't get down to work until the first Tuesday in March. Q. Of this year? A. Yes. Q. Is that heavier work than you were doing before? A. I was on my feet all day and stuff, and I just couldn't stand it, that's all. I couldn't take care of it. Q. Is that the reason you quit working? A. Yes. Q. And you aren't working anywhere at the present time? A. No. By Mr. Gannon (counsel for defendant): Q. Mr. Martin, one question: At the time you say you were transferred to this heavier work, if the company had allowed you to continue to work around the houses, you would have been all right? A. I guess I would be the same as I had been, as I was trying to get it fixed up." It is difficult to see how this

testimony would support an award, in any event, for more than partial disability.

The close and controlling question, however, in this case is whether any aggravation of the pre-existing condition of claimant's knee which may have occurred while he was digging the ditch on March 31, 1937, was caused by an "accident", within the meaning of Section 301 of our Workmen's Compensation Act of June 2, 1915, P. L. 736, 77 PS §411.

Giving claimant the full benefit of his statements that his leg "bothered" him all the time after March 31, 1937, and that he had frequent medical treatments, he still had the burden of showing that he sustained an injury by an "accident" while engaged in digging the ditch on that date and that such injury resulted in a disability over and above the disability he was already suffering from his previous accidents.

Claimant's testimony on the vital point of his case is extremely vague; it reads: "Q. And did anything happen to you while digging this ditch? A. I hurt my knee. Q. And how did you hurt your knee? A. Twisted it. Q. Well, just explain to the Referee how you twisted that knee? A. Well, we was shovelling there and digging, you know, and slipped off the shovel somehow or another, *I don't know just how it was done exactly* and throwed a ligament out of my knee or something, I don't know just what but anyway it started bothering me." (Italics supplied)

Nor do we obtain any assistance from the claim petition. As above indicated, it merely describes the alleged injury and avers it was received "while working in a ditch with a hand shovel." The only other competent evidence relative to the incident was that of claimant's "buddy", who testified he heard him exclaim: "I twisted my knee."

The one clear inference from the evidence is that claimant in some way twisted and again injured his

crippled knee. But, as stated by our Supreme Court in *Adamchick v. Wyoming Valley Collieries Co.*, 332 Pa. 401, 410, 3 A. 2d 377: "Our conclusion is that to secure compensation there must be proof both of an *accident* and of an *injury;* an *accident* cannot be *inferred* merely from an *injury.* There must be some evidence of an accident, either direct or circumstantial, in the latter instance clearly and logically indicating it." (Italics supplied)

We are not prepared to say, in the light of the above and other recent decisions of our Supreme Court, that the slipping of a workman's foot off a shovel while he is digging a ditch is such an unusual, unforeseeable and not to be expected, occurrence as amounts to an "accident", within the meaning of the statute. Claimant was doing his usual work under ordinary conditions and an occasional slipping of his foot off his shovel was to be expected. The incident here relied upon differs materially from the falls he experienced in his former accidents.

Another difficulty in the way of affirming this judgment is the absence from the record of competent evidence of any direct connection between the injury of March 31, 1937, and claimant's disability at the time of the hearing. Dr. C. L. Hobaugh, the company doctor, who attended claimant after his former accidents and during his hospitalization after he quit work, and Dr. J. M. Snyder, who drained the knee joint at the hospital, agree that claimant probably has "an injured internal semilunar cartilage," which would have to be removed in order to give him permanent relief. Both medical witnesses were called by claimant.

Although Dr. Hobaugh stated on direct examination that the condition of the knee when claimant was admitted to the hospital could probably have resulted from the injury of March 31, 1937, and that the "derangement of the right knee joint" had "originated at

the first injury and was aggravated with the subsequent injuries," his cross-examination demonstrates that he was unable to trace definitely any part of claimant's disability to anything more than the ordinary labor involved in digging a ditch. An excerpt from his testimony reads: "Q. Might that aggravation be by accident or just by working? A. Anything that has to do with the stability of the knee. Q. In other words, what I mean is, from the condition that you found in his knee, is it possible or probable, or what would you say, that it could be aggravated even by the doing of the ordinary work in digging a ditch? A. A man could be very careful and have no aggravation and he could be very careful and possibly injure his knee in ordinary routine. Q. In other words, the condition of that knee was such that it could have been aggravated by the ordinary routine of digging a ditch? A. I believe it could."

To a question directing his attention to the accident of December 13, 1936, and the occurrence of March 31, 1937, and inquiring whether he could express an opinion "as to the probability of the origin of [claimant's] present condition" as between the two, the witness replied: "The answer is no". After describing the condition of the knee Dr. Hobaugh's testimony continued: "Q. Doctor, is it the history of cases of that kind for a man to work for a considerable period? A. Yes. Q. And is it the history of a derangement of that kind for a man to work for a considerable period and then suddenly have a collapse because of some strain which would be not abnormal but such as a man might have in ordinary physical labor? A. Yes, sir."

Dr. Snyder, after expressing his opinion that claimant was able to do only work which "would not require him to be on his feet ...... such as a watchman's box or shanty," made no attempt to apportion his disability as between the "three distinct injuries to this knee" of which the witness had been given a history.

No testimony was offered on behalf of the employer and the disposition of the controlling issue therefore turns upon the strength of claimant's case. In our opinion, he has not met the burden of showing that any part of his present disability is due to the aggravation, by an "accident" in the course of his employment on March 31, 1937, of the pre-existing abnormal condition of his knee.

It cannot be questioned that claimant is at least partially disabled as a result of his first and second accidents. Although this employer cannot legally be compelled to pay compensation for either of them, because claimant did not file a claim petition within one year after their occurrence, it does not follow that it is not under a strong moral obligation to assist in his rehabilitation and furnish him with such light work as he is able to perform. He has been in the employ of the company for a long time and was twice accidentally injured in 1936 in the course of that employment. The present attitude of the employer, while legally justifiable, leaves much to be desired from a humane point of view.

Judgment reversed and here entered for defendant.