## Hoffman v. Nittany Printing & Publishing Co. et al.

*A. H. Lipez* and *Joseph C. Schock*, for claimant.

*Henry M. Hipple* and *John C. Youngman*, for defendant.

HIPPLE, P. J., May 20, 1946.—This is an appeal by defendant and its insurance carrier from the decision of the Workmen's Compensation Board affirming the findings of fact, conclusions of law and award of compensation by the compensation referee who found that Sheldon A. Hoffman, claimant, while in the course of his employment by Nittany Printing & Publishing Company, publisher of Centre Daily Times, sustained an accident which was superimposed upon a preëxisting condition of claimant's right tibia, characterized as an adamantinoma, causing a pathological fracture of the lower third of the right tibia, which made it necessary to amputate claimant's right leg above the knee.

The only matter for consideration by the court is whether there is competent evidence in the record to support the findings of fact and whether the law has been property applied thereto. The court is without authority to consider the credibility of the witnesses or to weigh the evidence to determine its force and effect. The matters for the court to determine are confined to questions of law and include a determination

whether there is competent and substantial evidence in the record to justify the findings of fact. If so, and if the law has been properly applied, the award of compensation must be affirmed even though an independent consideration of the evidence might lead us to a different conclusion.

Claimant was a reporter and community editor for the Centre Daily Times, published by defendant. In addition to the usual duties of a reporter in State College Borough, he edited and there was published, a hunting and fishing column two times weekly on the sports page of the newspaper. During the deer season he was sent by his employer to a hunting camp, as had been the custom, for information with relation to hunting items, and if anything of importance occurred during the time he was at the camp he reported it to the paper by telephone, or upon his return he used the information in his regular Rod and Gun Chatter column.

On December 4, 1940, he was en route to a deer hunting camp in the mountains above Renovo, Clinton County, Pa., and was accompanied by his brother, Dr. R. H. Hoffman, who at the time of the hearings before the referee was an officer in the medical corps of the United States Army, and therefore was not able to appear as a witness. Upon reaching Renovo they stopped to meet other members of their party and to obtain supplies. About 9.30 or 10 p.m. claimant went with his brother to a hardware store to obtain a flashlight. On coming from the store and while walking on the pavement claimant stated he sort of stubbed the toe of his right foot against a rise in the pavement as a result of which he immediately suffered severe pain in his right leg. He prevented himself from falling down by catching his knees. He was unable to walk and was placed by his brother in an automobile, taken to the office of Dr. Frank P. Dwyer where an x-ray was taken by Dr. John M. Dwyer and it was found

that claimant had suffered a simple pathological fracture of the right tibia. He was then removed to the Centre County Hospital at Bellefonte, remained there a few days and his leg was again x-rayed. Upon an examination of the x-ray plates and because of reports received from pathologists, he was removed to the Geisinger Memorial Hospital at Danville, Pa., where a punch biopsy was taken to determine the condition of the limb. It was found that claimant was suffering from a fibro sarcoma which was diagnosed as adamantinoma of the tibia, and the right leg was amputated above the knee at this hospital by Dr. Harold L. Foss on December 28, 1940.

When claimant appeared before the referee at the first hearing he was not represented by counsel.

Claimant described the occurrence in the following manner:

". . . My brother wanted a flashlight and we went to the hardware store, and when coming away from the hardware store I hit this piece of rough pavement and this seemed sort of a twist in my leg, and terrible pain. It was sort of a stub. . . .

"Q. And while walking along a sidewalk in Renovo this accident occurred?

"A. Yes sir.

"Q. Will you please describe again what occurred?

"A. We were coming from getting some supplies and as I was walking up the street with my brother, I hit a bad piece of pavement. It was sort of a stub of my toe. I didn't slip on anything.

"Q. What was the condition of the street or ground?

"A. It was just a small rise in the pavement there. It was fairly dark. It was on Erie Avenue, I believe. I am not sure of that.

"Q. Was there any snow on the street or the ground?

"A. There was a slight amount of snow that evening, but it was very dry and windy that evening and

the snow wouldn't lay on the walk. It was blowing around, like powder. It wasn't a crusty snow. At the time I didn't have any galoshes, just had a pair of regular street shoes. I didn't fall down, that is, I didn't go headlong.

"Q. Did you fall at all?

"A. I caught myself.

"Q. On what?

"A. On my knees. I grabbed my leg. I don't know whether I caught myself or whether I grabbed my leg, but I didn't fall down.

"Q. What leg was injured?

"A. Right leg.

"Q. And what happened to the leg?

"A. It was amputated.

"Q. I mean, what happened at the moment of the accident?

"A. Well, I had such a terrible pain I couldn't do anything, but just hold it, and my brother, of course, took hold of me.

"Q. Did you suffer a fracture of any kind?

"A. Yes, I suffered a fracture, a pathological fracture."

On cross-examination claimant testified:

"Q. Now this accident occurred in Renovo on December 4th, 1940?

"A. Correct.

"Q. And it occurred, according to your testimony, about 10 o'clock in the evening?

"A. Yes.

"Q. And the weather conditions, if I recall, were these: not especially cold, a little snow flurry, and snow had fallen but the sidewalk was clear of snow and ice?

"A. Excepting drifting.

"Q. And blowing?

"A. Yes.

"Q. Will you explain a little more definitely, as you did in your examination in chief just the manner of the happening of this accident?

"A. Nothing more than—I can't give any more details than what I have given. It happened just like that (indicating snap of fingers), and that's the only thing I know about it. What I said was that I was walking along the street and it was more of a stub of my toe than it was a slip. . . .

"Q. Are you sure you stubbed your toe?

"A. It was sort of a stub of my foot, yes.

"Q. You are sure that snow didn't cause you to fall or slip?

"A. No, it wasn't."

At the first hearing the only medical testimony in behalf of claimant was that of Dr. John M. Dwyer, who testified merely to taking an X-ray and stating that claimant suffered a pathological fracture of the lower third of the right tibia, and Dr. Henry Hunt, a pathologist of Geisinger Memorial Hospital, who made a biopsy and diagnosed claimant's condition as a sarcoma which he judged to be malignant, and that the leg should be amputated; that at the place of the fracture the bone was thin but there was also some intact bone. He pronounced the disease as adamantinoma.

Following the first hearing the testimony of Dr. James Ewing was taken in New York City by defendant. Claimant was not present in person, nor was he represented by counsel. He wrote to the Workmen's Compensation Board of New York that he was not able to incur the financial expense involved in going to New York for this hearing.

Dr. Ewing testified that he had received from the Geisinger Memorial Hospital a complete report of the case of claimant, together with a bisected tibia which Dr. Ewing examined microscopically; that the disease with which claimant was afflicted was known as adamantinoma of the tibia, a rare but well known disease, there being only 13 cases thereof in medical literature;

that it runs a slow course of from four to 18 years, destroying the bone, generally ending in a fracture and is usually cured by amputation, and that in most cases trauma directs attention to the disease. In Dr. Ewing's opinion claimant had been suffering from this disease from one to three years, or more, that the fracture of the right tibia was a pathological fracture due to the disease of the bone which became so weak that a small force was sufficient to break the bone and that there was a thin sheath of intact bone remaining; that no one could say just when the fracture would have occurred; that it might have broken at any time while claimant was walking around, going downstairs or going about his usual occupation. He was asked whether such fracture might be "due entirely and wholly to the disease with which this man was suffering, it would result in that?", meaning a fracture, to which he replied "plus the ordinary force exerted upon the muscular, a stubbing of the toe", and in answer to a question whether the stubbing of claimant's toe and pitching forward would be of sufficient force to cause a pathological fracture, Dr. Ewing stated: "Yes, a weakened bone like this almost any muscular exertion will determine the exact moment when the fracture occurs."

After the first hearing the referee found as a fact that there was no accident sustained by claimant within the meaning of the Workmen's Compensation Act, that the pathological fracture sustained by claimant was the ultimate result of the adamantinoma with which the claimant had been suffering three or four years, and disallowed compensation. The compensation board held that the referee erred in finding that when "Claimant struck or stubbed his right foot on a piece of rough pavement and caught his knee to save himself from falling this occurrence did not constitute an accident", and found that "it was definitely a fortuitous and unexpected happening and an untoward oc-

currence aside and distinct from the usual course of events. The results which followed were similarly uncertain and unexpected". However, the board found that the medical facts were not clearly established and therefore vacated and set aside the relevant findings of fact, conclusions of law, and the referee's order of disallowance, remanding the record to the referee for the purpose of obtaining the testimony of an impartial expert, and to hear such further testimony as might be relative to the issues.

Two different hearings were held thereafter and the testimony of Dr. E. H. Adams of Bellefonte, Pa.; Dr. H. P. Dale of State College, Pa.; Dr. H. L. Foss of Danville, Pa., was taken in behalf of claimant, together with further testimony by claimant; the testimony of Dr. Roy L. Simon of Williamsport, Pa., was taken in behalf of defendant together with the testimony of Dr. B. J. McCloskey of Johnstown, Pa., as an impartial medical expert.

Dr. E. H. Adams testified that there was a direct causal connection between the fracture on December 4th and the amputation of claimant's leg on December 28th.

Dr. Harold L. Foss, who amputated the leg, testified that the accident suffered by claimant on December 4th was the immediate cause of the fracture. Dr. Bernard J. McCloskey, the impartial medical expert, stated he had examined the x-ray pictures, the microscopic slides of the tissues, had received a full history of the case and his conclusion was that claimant did have an adamantinoma of the right tibia and that the event which occurred on December 4, 1940, was sufficient to cause a fracture of the leg; that from an examination of the X-ray pictures he found intact bone in this area; that the portion of the thinned out bone which was fractured was sufficient to bear claimant's weight prior to December 4, 1940, and that there was no fracture of the remaining intact bone; that the

amputation of the leg was the result of the fracture and while the fracture was the circumstance which led to the diagnosis of adamantinoma it was also the circumstance which fractured the leg and the amputation was performed not only for the fracture but also for the malignant tumor. After having been advised as to the definition of "proximate cause", Dr. McCloskey testified that the fracture on December 4, 1940, was the proximate cause of the amputation and because of the fracture and the presence of adamantinoma an amputation was required.

Dr. Roy L. Simon testified for defendant and in his opinion stated that the fracture was not the direct cause of the amputation, that it merely helped to establish the diagnosis of a bone tumor and that the fracture did not aggravate the preëxisting condition so as to cause amputation.

The burden is upon claimant to show that he met with an accident within the meaning of the Workmen's Compensation Act. To secure compensation there must be proof both of an accident and of an injury. An accident cannot be inferred merely from an injury and there must be some evidence of an accident, either direct or circumstantial.

An accident is defined in Adamchick v. Wyoming Valley Collieries Co., 332 Pa. 401, as "an event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event; chance, contingency", and:

"That which distinguishes an accident from other events is the element of being unforeseen; an accident is an occurrence which proceeds from an unknown cause, or which is an unusual effect of a known cause, and hence unexpected and unforeseen. The death of an employe, unless it is the result of some untoward happening, not expected or designed, a mishap or fortuitous happening, aside from the usual course of

events, is not compensable under our statute." Citing Lacey v. Washburn & Williams Co., 309 Pa. 574.

Upon the foregoing evidence the referee found that "claimant sustained an accident when he stubbed the toe of his right foot against an uneven pavement, which accident was superimposed upon a preëxisting condition in claimant's right tibia characterized as an adamantinoma, a malignant tumor which caused a pathological fracture of the lower one third of the right tibia, and that the proximate cause of the subsequent amputation of the claimant's right leg above the knee was the pathological fracture which he sustained", and found as a conclusion of law that claimant was entitled to recover compensation for the loss of the right leg.

Defendant contends that claimant did not suffer an accident within the meaning of the Workmen's Compensation Act, but that the pathological fracture occurred in some manner because of pressure of his body upon a piece of rough pavement, and the exceptions filed by defendant and its insurance carrier go to the findings and conclusions to the effect that claimant stubbed his foot while walking on a rough pavement, sustained an accidental injury and that the amputation of the right tibia and his disability were the proximate results of the fracture and therefore there was an accident within the meaning of the Workmen's Compensation Act.

As in Harring v. Glen Alden Coal Company, 332 Pa. 410, "this case is poised upon a very sharply defined point". Is the evidence sufficient to show that claimant, who is seeking compensation, stubbed his toe in such manner as to cause the fracture of his right tibia? If so, it may be concluded that the fracture "resulted from or was accelerated by, an injury due to an accident . . . and compensation should be allowed". On the contrary, if the occurrence as described by claimant is not sufficient evidence of an unexpected or unfore-

seen event, a mishap or a fortuitous happening such as a stubbing of the toe, then it follows that the fracture was a result of a preëxisting condition, viz., a fibro sarcoma or adamantinoma, which had been present in claimant's right leg for from one to three years, and which had so eaten away and weakened the bone that it was likely to break from a slight twist or sprain. In such case, claimant is not entitled to compensation.

No question is raised that the injury suffered by claimant did not occur during the course of his employment, and therefore the two questions to be determined are: (1) Was there an accident within the meaning of the Workmen's Compensation Act, and (2) was there a causal connection between the alleged accident and the amputation of claimant's right leg.

It is well established that the fact that claimant had a chronic condition which rendered him more susceptible to injury than an ordinary person would have been, will not defeat his right to compensation if the disability he suffered was the result of an accident: Reffner v. Consolidation Coal Company, 121 Pa. Superior Ct. 11.

In that case, in which an allocatur was refused by the Supreme Court, the claimant had suffered injuries to his back and a fractured leg in a fall of rock in 1926, and was paid compensation for this accident until he returned to work. He apparently continued his regular employment until 1933, or some seven years thereafter. While setting timber or props along a trolley line he suffered a sprain of his back. There was no evidence of an external mishap, such as slipping, falling or the like by reason of which violence was inflicted upon the surface of his body but compensation was awarded for total disability, it having been found that the sudden twist aggravated the preëxisting condition of his back.

Claimant herein described the occurrence as a sort of a stub of his toe against a small rise in the pavement

on Erie Avenue in Renovo. While he was afflicted with the disease known as adamantinoma of the tibia, Dr. James Ewing, defendant's medical expert, testified that the stubbing of claimant's foot or toe and pitching forward would be a sufficient force to cause the fracture of the right tibia. It is true that claimant did not fall to the ground. In some manner he caught himself or took hold of his leg, and was not precipitated to the pavement. The mere absence of a fall, however, does not in itself prevent the stubbing of the toe and the resultant fracture from being an accident. If, for instance, claimant's leg had been normal, and the stubbing of the toe had resulted in a twisting of the ankle so that it was sprained, such an occurrence would have constituted an accident, even if claimant had not fallen to the ground.

In Rosenberger v. Mar-Bern Coal Co., 151 Pa. Superior Ct. 373 (allocatur refused), deceased was bumped by a mine car on the right side of his chest which knocked his breath out and caused him to wheeze and puff, and to say that he thought he was hurt. However, he worked the balance of the day but did complain of a pain in his side. Three days later he consulted a physician, told him of the occurrence and was treated for a fractured rib. Almost a month after the occurrence the physician found that he was suffering from acute endocarditis, and an x-ray proved negative as to a fracture of the rib. The Superior Court held that whether the blow caused the endocarditis or aggravated or rendered more acute an existing latent endocarditis was not important if it was certain that it did one or the other. There apparently was no question but that claimant had a diseased condition of the heart. Compensation was allowed because the medical testimony showed that the bump was a marked contributory factor in causing the death of the injured person. In like manner, the stubbing of his toe by

claimant was a marked contributory factor in causing the fracture of claimant's right tibia.

Defendants argue that because of the condition of claimant's leg the mere stubbing of his toe against a rise in the pavement did not constitute an accident although as a result thereof a fracture occurred, that it is a common thing for persons to stub their toes while walking on a pavement and, in the absence of a fall, such happening cannot be termed an accident. However, the test is whether there is sufficient evidence of the happening of an *unexpected, external occurrence.* (Italics supplied.)

This distinction is made in Brodbeck v. W. F. Trimball & Son's Co., 150 Pa. Superior Ct. 299. Claimant there had been suffering from osteoarthritis of the lower back for which he was wearing a brace. The alleged accident occurred when he was walking down a plank. Upon reaching the end or bottom thereof he made a quick stop and immediately felt a pain in his back. There was no external mishap, *such as slipping, falling or the like.* Because of claimant's preëxisting disease which had progressed to the point where the continuation of his normal work was dangerous, and in the absence of any evidence of the happening of an *unexpected external occurrence,* the Superior Court held there was no accident. (Italics supplied.)

In this case there was the happening of an unexpected external occurrence, a stubbing of the toe on a dark night, between 9.30 and 10 o'clock, with snow blowing and at a place with which claimant was not familiar.

Defendant's rely upon Martin v. Union Collieries Co., 141 Pa. Superior Ct. 93, and Paydo v. Union Collieries Co., 146 Pa. Superior Ct. 385. These cases are not controlling. In the Martin case claimant was doing his usual work under usual or ordinary conditions, and while using a shovel his foot slipped and a

ligament in his knee was injured. He had previously injured his knee on two different occasions, and the only testimony as to an accident was his statement that his foot slipped from the shovel. There was no testimony to indicate that there was anything by way of *a fall, a bump or other incident of that nature.* The Superior Court held that the only inference which could be drawn from the testimony was that claimant in some unexplained way twisted or again injured his crippled knee and refused compensation because an accident cannot be inferred merely from an injury. (Italics supplied.)

In the Paydo case claimant was lifting a large piece of rock and testified he twisted his back while trying to throw the rock onto a pile. He was suffering from an advanced stage of osteoarthritis which could have been aggravated and have become very painful by any strain, even the ordinary hard work of a coal miner. Not only was there no occurrence that could be called an accident, but there were no outward signs of any accident.

It will be seen that in both of these cases there was no testimony indicating a fall, a bump or other incident of that nature, or any outward signs of any accident and merely because there was an injury, an accident could not be inferred.

Here, there were outward signs of an accident, a bump, viz., the stubbing of the toe, which resulted in the fracture of claimant's right tibia. It cannot be successfully contended that the stubbing of claimant's toe against the rise in the pavement with sufficient force to have caused a fall had claimant not been able to catch himself and prevent a fall was not an unforeseen or unexpected occurrence, or that the stub which was sufficient to fracture an intact bone shown to be in claimant's right leg was not a mishap or fortuitous happening aside from the usual course of events.

The medical testimony established a direct causal connection between the fracture and the amputation of claimant's right leg. Although Dr. Roy L. Simon stated the fracture was not the direct cause of the amputation but merely helped to establish a diagnosis of the bone tumor, the board accepted the other medical testimony as to causation. This the board had the right to do: Benci v. Vesta Coal Company, 131 Pa. Superior Ct. 435. Claimant was not aware of any pre-existing condition in his right leg prior to December 4, 1940. He had been able to use the leg normally and without inconvenience or handicap, and there was some medical testimony to the effect that he might be able to do so for sometime in the future. The law does not require that a medical expert state mathematically the exact extent to which an injury aggravates an existing physical condition: Wess v. Diebold Lumber Co., 141 Pa. Superior Ct. 76.

This case falls within the second classification set forth by Judge Cunningham in Royko v. Logan Coal Co., 146 Pa. Superior Ct. 449-460:

"(2) A second class of cases consists of those in which a weakened organ collapses by reason of some strain upon it, or a pre-existing chronic condition is so aggravated that death or disability ensues, but the strain or aggravation is attributable to some external unexpected, fortuitous and untoward, occurrence aside from the usual course of events, amounting to an accident within the meaning of the statute and, therefore, making the death or injury compensable."

And cases there cited.

It was necessary to amputate claimant's right leg above the knee. He therefore lost his right leg and is entitled to compensation therefor.

We conclude there was competent evidence from which the referee could find as a fact that claimant sustained an accident requiring the amputation of

his right leg above the knee, and the proximate cause of the amputation was the pathological fracture which claimant sustained, and that finding, having been affirmed by the Workmen's Compensation Board, is final.

Therefore, the exceptions of appellants are dismissed, and the following order is made:

### Order

And now, May 20, 1946, the exceptions of appellants to the award of the Workmen's Compensation Board, and the appeal of appellants from such award are hereby dismissed, and the award of the Workmen's Compensation Board affirming the findings of fact and conclusions of law of the referee is hereby affirmed. Judgment is hereby accordingly entered for claimant, Sheldon A. Hoffman, against Nittany Printing & Publishing Company and Travelers Insurance Company, insurance carrier, in the sum of $4,120.30, representing $3,780 compensation payable at the rate of $18 per week from December 12, 1940, with interest at the rate of six percent, from the time said payments should have been made to date of payment under this order, and the sum of $35 to the Centre County Hospital, Bellefonte, Pa.; the sum of $47.40 to the Geisinger Memorial Hospital, Danville, Pa.; and the sum of $167.40 to claimant, reimbursing him for amounts paid by him for hospital services, and in addition to pay the reasonable costs of medical and surgical services rendered claimant within the statutory period within the limitation of the act, and the sum of $175 to Dr. B. J. McCloskey, Johnstown, Pa., the cost of services rendered by him as an impartial medical expert called in the cause.

And now, May 20, 1946, defendant and Travelers Insurance Company, insurance carrier, severally except to the foregoing order and an exception is hereby allowed.