J-S18030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GEORGE BAI FORNAH | : | |
| | : | |
| Appellant | : | No. 1219 MDA 2021 |

Appeal from the Judgment of Sentence Entered July 6, 2021
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0006303-2018

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: SEPTEMBER 1, 2022**

George Bai Fornah appeals the judgment of sentence entered after a jury found him guilty of failure to comply with sex offender registration requirements.[1] Fornah raises sufficiency, evidentiary, jury instructions, and sentencing claims. We affirm.

On September 27, 2018, Fornah was charged with failure to comply with the registration requirements of Subchapter I[2] of the Sexual Offender Registration and Notification Act ("SORNA"). The Commonwealth alleged that

_____

[1] 18 Pa.C.S.A. § 4915.2(a)(1).

[2] **See** 42 Pa.C.S.A. § 9799.55. Prior statutes requiring sexual offenders to register were known as Megan's Law, and the trial court and parties in this case use that term. In 2012, the General Assembly adopted SORNA, which it later amended. As SORNA is the most recent statute, we will refer to the statute as SORNA in this memorandum when discussing the most recent offense. For any violation prior to 2012, we will refer to it as a Megan's Law violation.

he was required to register for life in Pennsylvania due to a 1989 Washington state conviction of Fornah for rape in the second degree. *See* Criminal Complaint; N.T., 04/06/21 at 161; Commonwealth Exhibit 2. According to Washington's version of SORNA, Fornah was required to register as a sex offender for life upon release from incarceration. N.T., 04/06/21 at 150.[3]

At trial, in April 2021, Lancaster City Police Officer David Rachor testified that on May 5, 2018, he responded to Fornah's Lancaster residence to investigate a disturbance claim. Officer Rachor testified that it was during this encounter that he learned of Fornah's address in Lancaster, PA and, upon running his record, found that Fornah had "an outstanding warrant [in] Washington for [a] Megan's Law violation." N.T., 04/05/21 at 80.

After his encounter with Fornah, Officer Rachor notified Detective Heather Halstead, an investigator with the Special Victims Unit of the Lancaster City Bureau of Police and the department's Megan's Law liaison, that Fornah resided in Lancaster and had an outstanding warrant for a Megan's Law violation in Washington State. *Id.* at 81; *also see* N.T., 04/06/21 at 138.

Detective Halstead testified that she conducted research on Fornah and contacted Seattle police detective Timothy Fields, who confirmed Fornah's

---

[3] In 2005, Fornah was convicted of failure to register his address accurately in the State of Washington. He signed legal documentation recognizing his requirement to register, including that he had to inform the State of Washington of any changes to his address. N.T., 04/06/21 at 150-151; Commonwealth Exhibit 5. In 2006, Washington State charged Fornah a second time with failure to register his address accurately according to Megan's Law in the State of Washington. That same year, in 2006, Fornah moved to a new residence in Lancaster, Pennsylvania.

conviction for rape, his status as a lifetime offender, his 2005 conviction for failure to comply with sex offender registration, and "a pending 2006 charge for also failing to comply with his Megan's Law registration." N.T., 04/06/21 at 141. Detective Halstead testified she obtained certified copies of the court records from Detective Fields. *Id.* at 141, 149.

Detective Halstead further testified that in June 2018 she visited Fornah's address and informed him of her belief that he needed to register as a sex offender under Pennsylvania's SORNA. During this encounter, Fornah admitted he had lived in Pennsylvania since 2006 but stated that he had been falsely accused and denied he had been convicted of crimes that would trigger registration. *Id.* at 142-143. Fornah informed Detective Halstead that "he had moved [to] Lancaster to live with his sister . . . in 2006 due to being harassed in Seattle, Washington by the police." *Id.* Detective Halstead testified that she informed Fornah that he had been convicted of rape in Washington state and showed him the physical documentation of his conviction. She said that she advised him that he must register as a sex offender in the Commonwealth, pursuant to SORNA. *Id.* 143-144. Detective Halstead stated that Fornah then called his sister. She informed both Fornah and his sister that Fornah was required to register as a sex offender in Pennsylvania. They claimed that they possessed paperwork to prove Fornah's innocence. Detective Halstead provided her business card, so Fornah could send the paperwork. The documents never materialized. *Id.*

Detective Halstead testified that after waiting for nearly two months and receiving no communication from Fornah, she contacted the Megan's Law[4] Unit of the Pennsylvania State Police ("PSP") for a review of Fornah's record and a determination of whether he was in violation of SORNA. *Id.* at 144-145. Detective Halstead testified that the PSP sent a letter to Fornah on August 24, 2018, advising him he needed to register. *Id.* at 145. On September 27, 2018, after confirming Fornah had not registered as a sex offender, Detective Halstead obtained a warrant for his arrest. *Id.* at 146.

A criminal investigative analysis officer for the PSP, Trooper Chad S. Roberts, testified that he is the liaison for the Megan's Law Unit in Harrisburg. He said that, as part of his responsibilities, he obtains the records from the PSP Megan's Law Unit, is a "keeper of those records," and testifies in court related to issues regarding SORNA. *Id.* at 89-90. Trooper Roberts testified that the PSP maintains "a statewide register of all past convicted, prior convicted, pled guilty, or adjudicated delinquent individuals who have committed a sexual offense deemed by law to be something that would need to have them register" under SORNA. *Id.* at 90.

He also said that the PSP additionally determines whether out-of-state offenders must register in Pennsylvania. *Id.* Trooper Roberts testified to the Commonwealth's Exhibits 1 through 4. Those exhibits included, among other things, a certified copy of Fornah's Washington guilty verdict for rape

_____

[4] The PSP continue to refer to the department handling sex offender registration as the Megan's Law Unit, and we will do the same.

(Commonwealth Exhibit 2), and the SORNA checklist completed by the PSP Megan's Law Unit (Commonwealth Exhibit 3). Trooper Roberts testified that the guilty verdict established Fornah's conviction for rape in the second degree and that he was sentenced in November 1989.

Trooper Roberts also elaborated on the details of the checklist and how the PSP determines that an individual from another state must register under SORNA in Pennsylvania. *Id.* at 97. The checklist includes: the profile of the individual, the name of the prior state, the out-of-state crime of conviction, the type of crime, the number of counts, the registration requirements of the prior state, the corresponding offense in Pennsylvania, the details of the similar crime according to Pennsylvania criminal statue, and the dates of the offense, arrest, conviction, and sentencing. *Id.* 97-98; Commonwealth Exhibit 3. Trooper Roberts testified that the Megan's Law Unit determined Fornah was subject to a lifetime registration requirement in Pennsylvania under SORNA. *Id.* at 99.

Trooper Roberts testified that the PSP sent Fornah a certified letter on August 27, 2018, stating that he must register in Pennsylvania as a sex offender within three days of receipt of the letter. *Id.* at 100; Commonwealth Exhibit 4. He failed to do so and made no subsequent contact with state or city police over the next month.

During Trooper Roberts' testimony, Fornah's counsel objected based on hearsay and the confrontation clause, arguing Trooper Roberts did not qualify to testify as to Fornah's SORNA violation because he was not the individual

who completed the checklist and determined Fornah's status. Fornah contested that Trooper Roberts' testimony constituted inadmissible hearsay and violated his right to confrontation. The court overruled the objection. N.T., 04/06/21 at 93.

Before instructing the jury, the court convened a charging conference. Fornah's counsel objected to the jury instruction stating that a person convicted of rape in another state where the rape statute was similar to Pennsylvania's rape statute would have been required to register with the PSP under a former sexual offender law between 1996 and 2012. *Id.* at 176. He argued, among other things, that the court was instructing the jury to find Fornah had committed the first element of the offense. *Id.* at 177. After the trial court instructed the jury, counsel renewed the objection. *Id.* at 210.

The jury convicted Fornah of failure to register as a sex offender. At sentencing, in July 2021, the court calculated Fornah's prior record score as a five and sentenced Fornah to five to 10 years of incarceration. Fornah filed a post-sentence motion, which the trial court denied in August 2021. Trial Ct. Op., filed 12/06/21, at 5. Fornah filed this timely appeal.

Fornah raises the following issues on appeal:

> I. Was the presented evidence insufficient to prove beyond a reasonable doubt that Mr. Fornah committed the offense of failure to register as set forth in 18 Pa.C.S. §4915.2(a)(1), where the Commonwealth did not present admissible evidence to prove that Mr. Fornah was subject to registration under 42 Pa.C.S. §9799.55?
>
> II. Did the trial court err in permitting Trooper Chad Roberts to testify that Mr. Fornah's Washington rape conviction was

similar to Pennsylvania's rape statute, and that Mr. Fornah was required to register as a sex offender, where Trooper Roberts did not testify that he was the custodian of the record, did not personally make the determinations regarding Mr. Fornah's status, and was not qualified as an expert witness?

III. Did the trial court err in instructing the jury: "an individual convicted of rape in another state which was similar to the crime of rape in Pennsylvania was required by Pennsylvania law to register with the Pennsylvania State Police under a former sexual offender registration law of this Commonwealth" thus complicating the appellant's Sixth Amendment rights by inclusion of an answer to a decision of fact?

IV. Did the trial court err in using Mr. Fornah's prior conviction for rape and prior conviction for failure to register to increase his prior record score?

Fornah's Br. at 2-6.

In his first issue, Fornah argues that the Commonwealth failed to provide sufficient evidence to prove guilt beyond a reasonable doubt. Fornah maintains the proof was insufficient as a matter of law because the verdict relies on Trooper Roberts allegedly inadmissible evidence testimony. Fornah's Br. at 28-29. He maintains this is a challenge to the sufficiency of the evidence.

Fornah's claim fails. When reviewing a challenge to the sufficiency of the evidence, "this Court considers all the evidence admitted, without regard to any claim that some of the evidence was wrongly allowed." *Commonwealth v. Habay*, 934 A.2d 732, 735 (Pa.Super. 2007) (citation omitted); *see also Commonwealth v. Maybee*, 239 A.2d 332, 335 (Pa. 1968) (holding that where verdict was based on inadmissible evidence, defendant was entitled to

new trial only, not arrest of judgment); *Commonwealth v. Gause*, 164 A.3d 532, 541 (Pa.Super. 2017) (citing *Commonwealth v. LaBenne*, 21 A.3d 1287, 1289 (Pa.Super. 2011)). Fornah's claim is thus utterly meritless. He makes no claim that the evidence is insufficient if we consider Trooper Roberts' testimony. Because when reviewing a sufficiency claim we consider all evidence admitted at trial, even that alleged to be inadmissible, this claim fails.[5]

In his second claim, Fornah argues the trial court erred in permitting Trooper Roberts to testify that Fornah's Washington conviction was under a statute similar to Pennsylvania's rape statute, and that Fornah was required to register as a sex offender. Fornah contends Trooper Roberts did not testify that he was the custodian of the PSP's records, did not personally make the determinations regarding Fornah's status, and was not qualified as an expert witness. Rather, according to Fornah, this portion of the trooper's testimony was inadmissible hearsay and violated Fornah's Confrontation Clause rights. Fornah further maintains the trial court erred in finding the documents and testimony admissible under the business record exception to the hearsay rule.

This Court's standard of review for evidentiary rulings is narrow. *Commonwealth v. Hernandez*, 230 A.3d 480, 489 (Pa.Super. 2020)

---

[5] Even if he had properly argued a sufficiency claim, we would find it lacks merit. We agree with the trial court that the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that Fornah was subject to a lifetime sex offender registration requirement. *See* Trial Court Opinion, filed Oct. 29, 2021, at 7-8 ("1925(a) Op.").

(citation omitted). We will reverse an evidentiary ruling only if the trial court abused its discretion. *Id.* An abuse of discretion is "not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Antidormi*, 84 A.3d 736, 749 (Pa.Super. 2014) (quoting *Commonwealth v. Weakley*, 972 A.2d 1182, 1188-89 (Pa.Super. 2009)).

Fornah maintains that Trooper Roberts was not qualified as an expert witness and therefore "not qualified to state his opinion regarding whether [] Fornah's Washington rape conviction was similar to Pennsylvania's rape statute, nor whether [] Fornah was required to register as a sex offender." Fornah's Br. at 40.

Pennsylvania Rules of Evidence 701 and 702 govern opinion testimony. The exception to the hearsay rule for records of a regularly conducted activity – often referred to as the business records exception – "applies to records of an act, event or condition, but does not include opinions and diagnoses." Pa.R.E 803(6) comment.

Here, Trooper Roberts testified on behalf of the PSP regarding Fornah's requirement to register as a sex offender under 42 Pa.C.S. § 9799.55 due to a prior 1989 conviction for rape in the second degree in Washington state. Trooper Roberts did not provide opinion or diagnostic testimony. Rather, his testimony was about facts and the applicable law. The records admitted through his testimony – certified copies of the defendant's conviction and

sentence, the letter to Fornah informing him of his need to register, Fornah's record with the Megan's Law Unit, and the Pennsylvania State Police form used to determine whether a person must register – contained facts. The PSP form consisted of a checklist of biographical information on the defendant, the information on the out of state conviction (including count, the type of crime, details of the crime, and the prior state registration requirements), and the similar and applicable offense in Pennsylvania according to statute. The checklist also included aspects such as the dates of offense, arrest, conviction, and sentencing. N.T., 04/06/21 at 97-98; Commonwealth Exhibits 1-4. These documents did not contain opinions. Therefore, as the testimony was not opinion testimony, Fornah's argument that the testimony constituted inadmissible expert opinion is meritless.

Fornah relies on **Commonwealth v. Hemingway**, 534 A.2d 1104 (Pa.Super. 1987), which is inapposite. In **Hemingway**, we noted that medical records are admissible to "show hospitalization, treatment and symptoms," but not admissible to show "opinions, diagnoses and conclusions." 534 A.2d at 1107 We concluded the hospital report in that case was not admissible without expert testimony where the Commonwealth offered it to prove "more than the event of hospitalization, treatment prescribed, symptoms given, or the existence of some readily ascertainable substance of chemical within the body." **Id.** at 1108; **see also Turner v. Valley Housing Dev. Corp.**, 972 A.2d 531, 537 (Pa.Super. 2009) ("[m]edical records are admissible under the hearsay rules as evidence of facts contained therein but not as evidence of

medical opinion or diagnosis"); **Virgo v. W.C.A.B.**, 890 A.2d 13, 21 (Pa.Cmwlth. 2005) (noting "a record in the nature of an expert opinion, diagnosis or one that contains conclusions or impressions are not admissible as a business record unless the person who rendered the opinion is available for cross-examination").[6]

Here Trooper Roberts did not present any opinion testimony. Similar to a document showing "hospitalization, treatment and symptoms," the checklist contained factual information, not opinions.[7]

We will next address whether the court erred in finding the records were admissible under the business record exception to the hearsay rule. Fornah maintains that Trooper Roberts was not qualified to testify regarding the records because he was not a custodian of the records.

The documents admitted through Trooper Roberts' testimony were hearsay. **See** Pa.R.E. 801(c) (defining hearsay as a statement, which includes a written assertion, "that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement"). Hearsay is inadmissible unless an exception to the hearsay rule applies. **See** Pa.R.E. 802. One such exception

---

[6] Fornah also cites **Virgo**. Although decisions made by the Commonwealth Court are persuasive authority, the decisions are not binding on this court. **Karus v. Taylor**, 710 A.2d 1142, 1144 (Pa.Super. 1998).

[7] Fornah makes no claim that the facts to which Trooper Roberts testified were incorrect. Fornah's counsel also did not contest that the Washington state rape statute was similar to the Pennsylvania rape statute. N.T., Apr. 6, 2021, at 120.

is the business records exception, which allows the admission of records, regardless of whether the declarant is available, if the following factors are met:

**(6) Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E 803(6).

Fornah does not contest that the documents meet elements (A), (B), (C), and (E) of Pa.R.E 803(6). His claim is that Trooper Roberts does not qualify as a custodian of the record. Fornah's Br. at 37. For purposes of Rule 803(6), "a qualified witness need not have personal knowledge, but the witness 'must be able to provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of

trustworthiness[.]'" ***MB Fin. Bank v. Rao***, 201 A.3d 784, 789 (Pa.Super. 2018) (quoting ***Keystone Dedicated Logistics, LLC v. JGB Enters., Inc.***, 77 A.3d 1, 13 (Pa.Super. 2013)) (alteration in original).

Here, the trial court concluded the business record exception applied and Trooper Roberts was a custodian of the records:

> In his testimony, [Trooper] Roberts stated that as part of his professional duties he worked with the PSP Megan's Law unit in Harrisburg, responsible for determining if an individual needs to register based on their past convictions. PSP maintains the state-wide registry of all persons convicted of sex offenses, including out-of-state offenders who were required to register in Pennsylvania. . . . [Trooper] Roberts had access to all of the records kept by the Megan's Law Unit in Harrisburg,[8] and those records were maintained under the care and custody of PSP in their regular course of business. [Trooper] Roberts stated that "we would obtain the actual records from the Megan's Law Unit and be a keeper of those records to present in court testimony like we are here today." Contrary to [Fornah's] assertion, [Trooper] Roberts was offered custodian of the records, and he was qualified to testify as custodian of the records, and he was accepted by the court in that capacity.

1925(a) Op. at 13 (citations to record omitted).

The court did not abuse its discretion in finding Trooper Roberts qualified as a custodian. That a separate person attested to the records as the

---

[8] The trial court stated Trooper Roberts was a member of the Megan's Law Unit. However, Trooper Roberts testified he was a liaison to the Megan's Law Unit and obtained records from the unit on behalf of the PSP, was a keeper of the records, and presented testimony in court. N.T., 04/06/2021, at 89-90. This inaccuracy does not affect our analysis.

"custodian" does not undermine our conclusion.[9] Rather, more than one person can be qualified to provide foundational testimony to permit admission of documents as business records. *See* Pa.R.E. 803(6) ("(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification"); *Bayview Loan Servicing LLC v. Wicker*, 206 A.3d 474, 483 (Pa. 2019) (citing *Fauceglia v. Harry*, 185 A.2d 598 (Pa. 1962)).

Fornah further claims that Trooper Roberts' testimony regarding the checklist violated Fornah's right to confrontation protected by the Sixth Amendment of the United States Constitution. He claims that, because the person who created the document did not testify, he was deprived of his right to confront a witness against him.

Records that are accepted under the business record exception to the hearsay rule are not exempt from violating the Confrontation Clause. *Commonwealth v. Carter*, 932 A.2d 1261, 1264 (Pa. 2007). "[I]f an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and

---

[9] Here, there was an attestation stating that the attestant was the custodian of the record of the PSP related to those required to register under SORNA, the documents were true and accurate copies of the records, and he possessed the knowledge to attest to the accuracy of the documents. *See* Cmwlth. Exh. 1; Pa.R.E. 902(11).

the accused has had a prior opportunity to confront that witness." *Commonwealth v. Yohe*, 79 A.3d 520, 537 (Pa. 2013) (citation omitted).

Here, PSP's worksheet was not testimonial and therefore its admission through Trooper Roberts' testimony did not violate the Confrontation Clause. Unlike the scientific reports at issue in the cases cited by Fornah, the PSP worksheet was not created for an evidentiary purpose and the PSP did not create the worksheet under circumstances which would lead an objective witness reasonably to believe that the [document] would be available for use at a later trial." *Id.* at 537 (citation omitted) (concluding toxicology report was testimonial where report addressed fact of defendant's driving while intoxicated by identifying blood alcohol content and report was made under circumstances which lead an objective witness reasonably to believe it would be available for use at later trial); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009) (ruling that analysts of medical lab reports are required to testify to the findings of their reports, noting statements are testimonial and therefore requiring an ability to confront witnesses where statements are made under "circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial"); *Commonwealth v. Barton-Martin*, 5 A.3d 363, 368 (Pa.Super. 2010) (relying on *Melendez-Diaz* and concluding the laboratory analyst was required to testify to the results of a blood alcohol test performed after alleged drunk driving, offered to establish blood alcohol content). Rather, the report's primary purpose was to determine whether Fornah had to register under

SORNA, and the PSP had a statutory duty to maintain a sex offender database. *See* 42 Pa.C.S.A. § 9799.67. Fornah's Confrontation Clause claim is meritless.

Accordingly, the trial court did not commit an error of law or an abuse of discretion. The court correctly accepted the testimony and documents under the business record exception found in Pa.R.E 803(6) and this action did not violate Fornah's right to confrontation.

In his third issue, Fornah argues the trial court erred when charging the jury by the inclusion of the following statement:

> I hereby instruct you that an individual convicted of rape in another state which was similar to the crime of rape in Pennsylvania was required by Pennsylvania law to register with the Pennsylvania State Police under a former sexual offender registration law of this Commonwealth on or after April 22, 1996, but before December 20, 2012.

N.T., 04/06/21, at 204.

Fornah maintains that the instruction violated his right to a jury trial under the Sixth Amendment of the United States Constitution. He maintains the trial court's statement usurped the role of the jury and claims it violated his right to have a jury determine whether the Commonwealth proved each element of the offense beyond a reasonable doubt. Fornah's Br. at 48. He claims that the above instruction required the jury to find Fornah had to register as a sex offender in Pennsylvania. *Id***.**

"When reviewing a challenge to jury instructions, the reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial." *Commonwealth v. Fletcher*, 986

- 16 -

A.2d 759, 792 (Pa. 2009). "The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." *Id.* (quoting **Commonwealth v. Prosdocimo**, 578 A.2d 1273, 1274 (Pa. 1990)). The granting of relief in the form of a new trial is only required by the reviewing court if the instruction contained "fundamental error, misled, or confused the jury." **Fletcher**, 986 A.2d at 792.

The jury convicted Fornah of failure to comply with sex offender registration requirements under 18 Pa.C.S. § 4915.2(a)(1). That statute provides that a person required to register as a sex offender under 42 Pa.C.S. § 9799.55(b) commits a crime if the individual knowingly fails to register with the PSP.

Section 9799.55(b)(2)(ii) subjects a person who resides in Pennsylvania to lifetime registration if the individual was convicted of an offense similar to rape "under the laws of . . . another state" and was required to register "with the [PSP] under a former sexual offender registration law of this Commonwealth . . . on or after April 22, 1996, but before December 20, 2012." 42 Pa.C.S.A. §§ 9799.55(b)(2)(ii), (2)(i).

The portion of the instructions at issue, in full, merely advised the jury of the relevant circumstances in which a person convicted of rape in another state must register in Pennsylvania, and told the jury that it had to determine whether Fornah had to register:

An individual who has a residence, is employed, or is a student in the Commonwealth of Pennsylvania, and has been convicted of or sentenced by a court for a similar offense under the laws of another state, or who was required to register under a sexual offender statute in the jurisdiction where convicted or sentenced, shall register at an approved Pennsylvania State Police registration site within three business days of the individual's arrival in this Commonwealth.

An individual who has been convicted of rape under the laws of another state which is similar to the crime of rape in Pennsylvania, and who would have been required to register with the Pennsylvania State Police under a former sexual offender registration law of this Commonwealth on or after April 22, 1996 but before December 20, 2012, shall be subject to lifetime registration in Pennsylvania, if that individual was residing in Pennsylvania, was employed in Pennsylvania, or was a student in Pennsylvania when he was charged with the current offense.

I hereby instruct you that an individual convicted of rape in another state which was similar to the crime of rape in Pennsylvania was required by Pennsylvania law to register with the Pennsylvania State Police under a former sexual offender registration law of this Commonwealth on or after April 22, 1996 but before December 20, 2012.

To find the defendant guilty of this offense, you must find that the following two elements have been proven beyond a reasonable doubt: First, that the defendant was an individual required to register with the Pennsylvania State Police in accordance with Pennsylvania's Megan's Law.

Second. That the defendant knowingly failed to do so. To act knowingly in this regard means that the defendant was aware of his obligation to register and voluntarily did not do so.

N.T., 04/06/21, at 204-05.

This was not error. The charge, including the challenged portion, was a clear, accurate, and adequate statement of relevant law. The trial court did not specify that Fornah's Washington state rape conviction required that he

- 18 -

register in Pennsylvania. Rather, it provided an accurate legal statement that an individual convicted in another state of a crime similar to rape in Pennsylvania would have been required to register in Pennsylvania under prior sexual offender registration statutes. N.T., 04/06/21 at 204-205. Further, we agree with the trial court that the jury remained free to determine if Fornah was convicted of rape, if the offense of rape in Washington was similar to the offense of rape in Pennsylvania, if Fornah was residing in Pennsylvania, and if Fornah knowingly failed to register. The trial court did not err in its instruction.

The final issue Fornah raises on appeal is whether the trial court erred when it used his Washington rape and failure to register convictions when calculating his prior record score. Fornah argues inclusion of the two convictions violated the Sentencing Code. This claim challenges discretionary aspects of his sentence.

"Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Durazo*, 210 A.3d 316, 319 (Pa.Super. 2019) (quoting *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa.Super. 2010). To determine whether we have jurisdiction over the issue, we must determine whether the appellant satisfied a four-part test:

> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider or modify sentence; (3) whether appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal [("Rule 2119(f) statement")] with respect to the discretionary aspects of sentence; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

***Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa.Super. 2013) (citation omitted).

In this case, Fornah filed a timely notice of appeal, properly preserved his claims in his post-sentence motion, and included a separate, concise Rule 2119(f) statement in his appellate brief. Thus, we proceed to determine whether Fornah has raised a substantial question for our review.

Fornah contends his prior convictions for rape and failure to register should not have been counted in his prior record score. Such a claim raises a substantial question that merits review. ***See Commonwealth v. Cook***, 941 A.2d 7, 11 (Pa.Super. 2007); ***Commonwealth v. Shreffler***, 249 A.3d 575, 584 (Pa.Super. 2021) (stating claim that a court miscalculated prior record score raises a substantial question).

The standard review of challenges made against the discretionary aspects of sentence is well defined:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Antidormi***, 84 A.3d at 760 (Pa.Super. 2014) (citation omitted)).

When sentencing a criminal defendant convicted of a felony and/or misdemeanor, the trial court must consider, among other things, the sentencing guidelines adopted by the Pennsylvania Commission on

Sentencing. ***Commonwealth v. Spenny***, 128 A.3d 234, 242 (Pa.Super. 2015) (citing 42 Pa.C.S.A. § 9721(b); 204 Pa.Code 303.1(a)). The trial court must determine the offense gravity score and the defendant's prior record score to establish the guideline sentence for each conviction. ***Id.***; ***see also*** 204 Pa.Code § 303.2(a).

Prior record scores are determined in the following manner:

The prior record score is based on the number and type of prior convictions the defendant has on his or her criminal record. 204 Pa.Code § 303.4(a). Each prior conviction is given a point value ranging between one and four points. ***See*** generally 204 Pa.Code §§ 303.7, 303.15.Sections 303.7 and 303.15 set forth the point value for every Pennsylvania criminal offense, but generally speaking . . ., first-degree felony ("F1") convictions are either three- or four-point offenses, F2 convictions are two-point offenses and F3 convictions are one-point offenses. ***See id***.

A higher prior record score yields a higher guideline sentence, up to a maximum of five points. 204 Pa.Code §§303.4(a)(3), 303.16(a).

***Spenny***, 128 A.3d at 242. "Any prior conviction which contributed to an increase in the grade of a subsequent conviction, except for prior Driving Under the Influence of Alcohol or Controlled Substance convictions" shall "not be scored in the Prior Record Score." 204 Pa.Code § 303.8(g)(3).

Fornah first claims the trial court erred in using his prior conviction of rape to increase the prior record score. Fornah claims that the prior conviction of rape is an element of the offense of failure to register and therefore should not have counted toward the prior record score.

We rejected just such an argument in **Commonwealth v. Johnson**, 758 A.2d 1214 (Pa.Super. 2000). There, this Court concluded that the prior conviction that resulted in the need for a defendant to register is not itself an element of the crime of failure to register. **Id.** at 1217. We reasoned that "the prior conviction of rape is merely a pre-condition to charging and convicting [the appellant] of" failing to register as a sex offender. **Id.** at 1218. "The pre-condition is not part of the conduct that resulted in the charges." **Id.** We also concluded that the "offenses at issue do not contain sub-categories of grading," where the prior rape conviction would increase the grading of the current offense. **Id.** at 1219.[10]

The trial court did not err in using Fornah's prior conviction of rape to calculate the prior record score. Fornah was charged and convicted of "Failure to Register." 18 Pa. C.S.A. § 4915.2. This offense states that an individual is guilty if they are subject to registration with the Pennsylvania State Police under 42 Pa.C.S. § 9799.55(a), (a.1), (b), and knowingly failed to register.

---

[10] Fornah's claim that the Supreme Court's decisions in **Commonwealth v. Jemison**, 98 A.3d 1254 (Pa. 2014), casts doubt on **Johnson** is likewise meritless. In **Jemison**, the defendant was convicted of firearm offenses, including person not to possess a firearm. 98 A.3d at 1256. The Commonwealth introduced a certified copy of a robbery conviction to establish the firearm disability. The Supreme Court concluded the defendant did not "suffer[] unfair prejudice merely by the admission into evidence of his or her certified conviction of a specific, identified, predicate offense, which ha[d] been offered by the Commonwealth to prove the prior conviction element" of the offense. 98 A.3d at 1262. **Jemison** did not address either the calculation of a prior record score or a failure to register conviction.

*Id.* A conviction for rape is not an element of the offense. *See Johnson*, 758 A.2d at 1218-19.

Further, Fornah's prior conviction for rape did not increase the grading of the current offense. *See* 18 Pa.C.S.A. § 4915.2(c)(2) ("Except as set forth in paragraph (3), an individual subject to registration under 42 Pa.C.S. § 9799.55(b) . . . and who is subject to lifetime registration who commits a violation of subsection (a)(1) or (2) commits a felony of the second degree"). Fornah's first challenge to the discretionary aspects of sentence lacks merit.

Fornah next claims the trial court erred in using his prior conviction for failure to register to increase the prior record score. Both the trial court and Commonwealth concede that Fornah's prior conviction of failure to register should not have been included in the prior record score because that conviction was used to increase the grade of his present offense. Trial Ct. Op., at 16-17; *accord* Commonwealth's Br. at 33.

We agree. Because Fornah had a prior conviction for failure to register pursuant to a lifetime registration requirement, the current conviction for failure to register increased from a second-degree felony to a first-degree felony. This is in accordance with 18 Pa.C.S.A. § 4915.2(c)(3), which states:

> (3) An individual subject to registration under 42 Pa.C.S. § 9799.55(b) or former 42 Pa.C.S. § 9793 and who is subject to lifetime registration who commits a violation of subsection (a)(1) or (2) and who has previously been convicted of an offense under subsection (a)(1) or (2) or a similar offense commits a felony of the first degree.

18 Pa.C.S.A. § 4915.2(c)(3).

Therefore, the trial court erred in considering this conviction when calculating the prior record score. **See** 204 Pa.Code § 303.8(g)(3). However, no relief is due. Although the prior conviction for failure to register should not have been included in the prior record score, its inclusion did not change the guidelines range. Without the prior failure to register conviction, Fornah's prior record score would include the prior rape conviction score of four and two prior misdemeanors for assault and resisting arrest, which include a combined score of one, such that his prior record score would continue to be five. N.T., 07/06/2021 at 14-15.

Therefore, the prior record score remained a five, regardless of whether the court included the failure to register conviction. **See** 1925(a) Op. at 17-18 (citation omitted). Fornah does not contend that the prior record score would have been different without inclusion of this conviction. Rather he argues we should vacate the sentence because the court incorrectly included both the rape and the failure to register convictions. **See** Fornah's Br. at 61. As we concluded above, the court correctly included the rape conviction. Therefore, the calculation of the prior record score does not change and no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/01/2022